IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 12, 2016 Session


## CHARLES EVERETT LOWE-KELLEY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Maury County**
**No. 17948     Stella L. Hargrove, Judge**

_____

**No. M2015-00138-CCA-R3-PC – Filed February 24, 2016**

_____

Petitioner, Charles Everett Lowe-Kelley, appeals the denial of his petition for post-conviction relief, arguing that he received the ineffective assistance of counsel. He also argues that his consecutive life sentences violate *Miller v. Alabama*, 132 S. Ct. 2455, 2469 (2012). We conclude that Petitioner has not proven that he received ineffective assistance of counsel and that his effective sentence does not violate *Miller*. Accordingly, the decision of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Thomas M. Hutto, Columbia, Tennessee, for the appellant, Charles Everett Lowe-Kelley.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee and David H. Findley, Assistant Attorneys General; Brent Cooper, District Attorney General; and Robert Carter and Ann Filer, Assistant District Attorneys General, for the appellee, State of Tennessee.


## OPINION

### I. Procedural History

Petitioner was convicted of two counts of first degree murder and nine counts of attempted first degree murder for firing a gun into a crowded vehicle. *State v. Lowe-*

*Kelley*, 380 S.W.3d 30, 32 (Tenn. 2012). He received two consecutive life sentences to run concurrently with nine fifteen-year sentences. *Id.* His convictions and sentences were affirmed on direct appeal. *State v. Charles E. Lowe-Kelley*, No. M2012-01933-CCA-RM-CD, 2012 WL 5873512 (Tenn. Crim. App. Nov. 20, 2012), *perm. app. denied* (Tenn. Mar. 5, 2013).

On November 12, 2013, Petitioner filed a pro se petition for post-conviction relief. On March 14, 2014, appointed counsel filed an amended petition alleging ineffective assistance of counsel, and the post-conviction court held an evidentiary hearing on November 24, 2014.

## II. Factual Summary of Trial[1]

Petitioner attended a raucous party on April 12, 2008, at the National Guard Armory in Columbia. During the party, several fights occurred, one of which involved one of the victims. The police eventually shut down the party. Petitioner was recorded on police dashboard camera footage leaving the party with one of the codefendants. A police officer observed that same codefendant leaving the party in a gold-colored vehicle with three passengers.

According to victims' testimony, their car full of people was driving away from the party, when another vehicle approached from behind. As the pursuing vehicle pulled up beside the victims, it turned off its headlights and gunfire erupted. The driver of the victims' vehicle reacted by ramming the pursuing vehicle off the road. Shortly thereafter, police found the gold-colored vehicle off-road in a ditch. Two of the codefendants remained at the scene and were arrested after police found an automatic rifle near their car. The other two passengers seen earlier were not present at the scene.

Tiffany Fuller, a girlfriend of one of the codefendants, testified that Petitioner called her at 2:00 a.m. and told her that there had been "an accident" involving her boyfriend. Petitioner informed her that her boyfriend was still at the scene, but Petitioner had fled. Petitioner did not admit to her that he was a shooter, but he specifically told her that two of the codefendants did not fire a weapon.

Jason Fletcher testified that Petitioner arrived at his home the next afternoon and said that he needed to talk to him. Petitioner's uncovered legs were cut up "like he'd been running through thorns." Petitioner explained that a fight had occurred at the party and after it ended, one of the codefendants gave him a gun. As Petitioner and his

---

[1] These facts are derived from this Court's opinion in *State v. Charles E. Lowe-Kelley*, No. M2012-01933-CCA-RM-CD, 2012 WL 5873512, at *1-5 (Tenn. Crim. App. Nov. 20, 2012), *perm. app. denied* (Tenn. Mar. 5, 2013).

codefendants pulled up to the victims' vehicle, he and one of the others began shooting. Petitioner used a .38 caliber handgun and "emptied the clip."

Paul Swafford testified that two days later, Petitioner admitted to him that he had been involved in the shooting, which he described as a "cold hit." Petitioner admitted that he had used a .38 caliber handgun.

A .38 caliber bullet was found lodged in the victims' vehicle and both of the deceased victims were killed by bullets from the same .38 caliber handgun, although the gun was never recovered. A green bandana found at the scene contained DNA from Petitioner and one of his codefendants. When arrested, Petitioner had newspaper clippings in his pants pocket about the shooting and the arrest of two of the codefendants.

### III. *Factual Summary of Post-conviction Hearing*

Petitioner testified that he was sixteen years old when he committed the underlying offenses, and under his effective sentence, he will not be eligible for parole until 2130.

Petitioner recalled that trial counsel only met with him twice before the trial. Trial counsel discussed some of the witness statements with Petitioner, but trial counsel did not review all of the discovery materials with him. Petitioner did not recall them discussing his statement to police. Trial counsel did not inform Petitioner that one of the codefendants made two different statements to the police, in the first of which he denied that Petitioner was involved. Trial counsel told Petitioner that he attended the trial of one of the codefendants, but trial counsel did not discuss any of the details of the testimony that was presented at that trial. Trial counsel did not provide Petitioner with a personal copy of the discovery despite requests to do so.

However, Petitioner admitted that his first attorney did review all of the discovery materials with him, and Petitioner frankly acknowledged to the post-conviction court judge, "I knew what they had against me, m'am." Petitioner and trial counsel discussed the statements of Paul Swafford, Jason Fletcher, and Tiffany Fuller, but Petitioner never saw copies of the statements. Petitioner admitted that he was not surprised by any of the testimonies given by those witnesses at trial.

They did not discuss potential witnesses, and trial counsel did not ask Petitioner about whether there were witnesses who could testify on his behalf. However, Petitioner admitted that he did not know of any witnesses who would have been beneficial to his case except possibly an individual named Antonio Warfield. Petitioner did not explain what testimony Mr. Warfield could have provided. To Petitioner's knowledge, trial counsel did not do any pre-trial investigations into the State's witnesses or try to find

-3-

potentially favorable witnesses.[2] They did not discuss the possibility of calling any of the codefendants to testify. Trial counsel did not inform Petitioner that the State was going to introduce expert testimony about some of the physical evidence and did not discuss the possibility of obtaining funds for hiring a counter expert witness to testify at trial.

Trial counsel did not explain to Petitioner the concept of criminal responsibility, but he did explain the concept of felony murder. Petitioner knew that trial counsel filed a motion for continuance and a motion to suppress a recording of a phone call made to Petitioner by one of the codefendants from the county jail before Petitioner had been arrested. Trial counsel did not discuss their trial strategy much other than that they would rely on portraying Petitioner as a young and abused juvenile. Petitioner did not feel prepared to go to trial. Trial counsel did not discuss with Petitioner his decision not to present any proof.

Petitioner knew that he had the right to testify at trial, but trial counsel did not explain it to him. They did not discuss the advantages and disadvantages of testifying. Trial counsel did not tell Petitioner that his juvenile record could not be used to impeach him at trial if he testified. Petitioner admitted that it was his decision not to testify but said he made that decision because of trial counsel's advice. After trial counsel advised Petitioner that it was in his best interest not to testify, "it really closed all the conversation of it." Petitioner said that if he had testified it "would be something different" than what the witnesses against him said, but Petitioner did not elaborate on the details of what his testimony would have been. Trial counsel did not prepare Petitioner for the *Momon* hearing, and during the hearing, Petitioner felt "intimidated" by the questions asked by the trial judge.

Trial counsel did not meet with Petitioner before the sentencing hearing and did not inquire about Petitioner's mental health or substance abuse issues, although Petitioner did not testify that he had either. They did not discuss potential character witnesses for trial or sentencing. Petitioner admitted that he did not ask his mother to testify at the sentencing hearing because "she probably doesn't want to have any more to do with it than she already does." Petitioner proffered a written statement at the sentencing hearing, but trial counsel did not help him prepare it. Petitioner recalled that he talked to trial counsel about introducing Petitioner's high school diploma at the sentencing hearing.

Mike Bottoms was the retired District Attorney General for the 22nd District of Tennessee. He was the lead prosecutor on this case. The District Attorney's Office had an open-file discovery policy, but he could not remember whether trial counsel ever visited the office to look at the discovery file in this case. Mr. Bottoms remembered that

---

[2] Paul Swafford was a witness for the State during Petitioner's trial. He testified at the evidentiary hearing that trial counsel did not contact him prior to Petitioner's trial.

trial counsel sat through the entire trial of one of the codefendants. Mr. Bottoms testified that the State's strategy would have been the same in this case, even if the phone call had been suppressed, because the lynchpin evidence was the in-court testimony of one of Petitioner's friends to whom he had admitted the shooting.

Attorney Billy Barnes was initially appointed to represent Petitioner during the juvenile proceedings before this case was transferred to the circuit court, where trial counsel began his representation. Mr. Barnes estimated that he had "probably four meetings, varying between thirty minutes and two hours" with Petitioner. Trial counsel called Mr. Barnes "probably four" times with questions about the case; those calls were "probably varying from an hour in length [at] the longest and probably fifteen minutes [at the] shortest." Mr. Barnes turned over his entire file to trial counsel, including the complete discovery file that he received from the District Attorney's Office. They had a discussion about the case when they exchanged the file. Mr. Barnes was aware of a jailhouse phone call, but he never listened to it.

Trial counsel testified that he had been practicing law for less than three years when he began representing Petitioner. He had only tried one other criminal case. Trial counsel did not have any previous experience with a homicide case, a capital case, or a case with a potential life sentence. Petitioner's case "took up the brunt" of trial counsel's time, but he also had several other ongoing matters.

Trial counsel spent several hours preparing for the case. He met with Petitioner three or four times. They discussed the charges and potential defenses. They also discussed potential witnesses, including Mr. Warfield, but trial counsel did not recall Petitioner suggesting any other favorable witnesses. They did not discuss potential character witnesses. Trial counsel did not feel that Petitioner had any favorable witnesses worth calling.

After watching the entire trial of one of the codefendants, trial counsel decided that the best trial strategy was to raise reasonable doubt as to whether Petitioner was present. To prepare for the trial, trial counsel listened to the testimony of the officers about their interviews with witnesses. He read the witness statements. He listened to the transfer hearing. He reviewed everything in the case file. Trial counsel was unaware that he could have requested funds for an expert witness; however, he did not feel there was an apparent need for an expert.

Trial counsel did not believe that there was a basis for suppressing the jailhouse phone call under *Crawford* or *Bruton*. Trial counsel acknowledged that he did not raise an authentication objection at trial as to the phone call.

Trial counsel admitted that he did not interview Jason Fletcher, Paul Swafford, Tiffany Fuller, or any of the codefendants, although he spoke to the attorney of one of the codefendants. However, trial counsel discussed those witnesses and their statements with Petitioner, and trial counsel obtained reports of their criminal background checks. Trial counsel did not speak to any of the victims. He did not talk to any of the State's expert witnesses before trial. However, trial counsel did talk to Mr. Warfield about this case. Trial counsel testified that he was prepared to cross-examine all of the witnesses who testified during the trial.

Trial counsel was aware of Tiffany Fuller before trial, but she was not listed as a witness and her statement was not in the discovery. Trial counsel did not go to the District Attorney's Office to ensure that he had the entire discovery file. Trial counsel discussed Tiffany Fuller with Petitioner before the trial. Trial counsel sought to suppress her testimony at trial once he discovered that she would be testifying. Nonetheless, trial counsel felt he was prepared to cross-examine Ms. Fuller based on his discussions with Petitioner about her.

During the trial of one of the codefendants, trial counsel spoke to one of the witnesses who said that he saw three people get into the vehicle involved in the shooting, but he did not see Petitioner get into that vehicle. Trial counsel impeached the witness with his prior testimony when he testified differently at Petitioner's trial. Trial counsel did not investigate whether anyone else saw Petitioner get into the vehicle.

One of the codefendants had given two inconsistent statements to police; in the first of which he did not identify Petitioner as being involved in the crime. However, trial counsel did not think that he could get that codefendant to testify on Petitioner's behalf. Consequently, trial counsel could not introduce the codefendant's favorable first statement to police.

They discussed Petitioner's decision not to testify. They went through what the substance of Petitioner's testimony would be if he decided to testify. Trial counsel advised Petitioner that he had the right to testify. This was the first *Momon* hearing in that judicial district for trial counsel. The district's common practice was for the trial judge to conduct the *Momon* hearing. Trial counsel sat next to Petitioner during the hearing.

In regard to sentencing, trial counsel did not discuss the psychological report with the examiner who did the pre-trial mental evaluation of Petitioner and did not consider having him testify. Trial counsel did not consider calling the Administrator of the Juvenile Detention Center as a witness at the sentencing hearing, even though the Administrator wrote a letter on Petitioner's behalf. Trial counsel believed that he met with Petitioner before the sentencing hearing, but he could not recall doing so.

According to trial counsel, he did help Petitioner prepare the written statement. Trial counsel asked Petitioner's mother to testify at the sentencing hearing but she declined.

After the hearing, the court denied post-conviction relief, and Petitioner filed a timely notice of appeal.

## II. Analysis

Defendant argues that the post-conviction court erred in denying his petition for post-conviction relief. He maintains that trial counsel provided ineffective assistance because he failed: (1) to have the jailhouse phone call excluded from the trial; (2) to prepare for the testimony of Ms. Fuller; (3) to investigate known and potential witnesses; (4) to request funds to hire an expert witness; (6) to present a defense; (7) to present witnesses at the sentencing hearing; and (8) to properly conduct the *Momon* hearing. Petitioner also asserts that trial counsel was too inexperienced and should have been required to satisfy our supreme court's rules for counsel in capital cases. Finally, Petitioner argues that his sentence violates the Eighth Amendment as interpreted by the United States Supreme Court in *Miller v. Alabama*, 132 S. Ct. 2455, 2469 (2012).

In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, this Court gives deference to the trial court's decision on questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence. *Momon*, 18 S.W.3d at 156 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not reweigh or reevaluate the evidence presented below and is bound by the findings of the post-conviction court unless the evidence preponderates otherwise. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). However, the post-conviction court's conclusions of law and application of the law to the facts are subject to de novo review with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

### A. Ineffective Assistance

Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. The test for ineffective assistance of counsel is a two-pronged test: a petitioner "must show first that counsel's performance was deficient and second that the deficient performance prejudiced the defense." *Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "Because a

petitioner must establish both prongs . . . to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Counsel's performance is considered reasonable "if the advice given or the services rendered [were] within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). To be considered deficient, counsel's acts or omissions must fall below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. However, this Court will not use hindsight to second guess counsel's tactical decisions unless the choices were uninformed because of inadequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Id.*

Petitioner argues that trial counsel was ineffective because he failed to have the recording of the phone call between Petitioner and one of the codefendants excluded from evidence at trial. First, Petitioner argues that trial counsel's motion to suppress was inadequate because it did not contain developed argument or citations to controlling law. Second, Petitioner argues that trial counsel failed to object to the evidence at trial on the basis that it was not properly authenticated.

Assuming, without deciding, that trial counsel's performance was deficient in this regard, Petitioner has not shown that there is a reasonable probability that the outcome of the trial would have been any different, even if the phone call had been excluded from the evidence. The evidence against Petitioner was overwhelming. Three witnesses testified that he admitted his involvement in the shooting. Given the nature and extent of the other evidence properly before the jury, we have no difficulty in concluding that Petitioner still would have been convicted and was not prejudiced by trial counsel's actions with regard to the phone call. Accordingly, Petitioner is not entitled to relief on this basis.

Petitioner argues that trial counsel was ineffective because he was unprepared for the testimony of Ms. Fuller at trial. We disagree. Both trial counsel and Petitioner acknowledged that they discussed Ms. Fuller's statement to police and Petitioner's conversation with her. Although trial counsel did not believe that Ms. Fuller would be called as a witness, he testified that he was prepared to cross-examine her and his cross-examination would not have been materially different with additional preparation. Petitioner has not offered any specific suggestion as to what more trial counsel could have learned about this witness. Therefore, Petitioner has failed to prove either deficiency or prejudice. This issue is without merit, and Petitioner is not entitled to relief on this basis.

Petitioner argues that trial counsel was ineffective because he did not conduct an independent investigation into the State's witnesses and did not investigate potential witnesses who could have testified on Petitioner's behalf. Petitioner has again failed to prove either deficiency or prejudice by trial counsel. Petitioner has not offered any evidence as to what any additional investigation would have revealed. Further, he testified at the evidentiary hearing that he did not know of any witnesses who would have been beneficial to him at trial had they been called on his behalf, aside from possibly Mr. Warfield, who did not testify at the evidentiary hearing. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Therefore, Petitioner has failed to prove either deficiency or prejudice by trial counsel. This issue is without merit, and Petitioner is not entitled to relief on this basis.

Petitioner argues that trial counsel was ineffective because he did not hire an expert witness to rebut the testimony of the State's experts. However, Petitioner did not present any expert witness testimony at the evidentiary hearing that would have benefited him if it had been presented to the jury. *See id.* Because Petitioner did not introduce evidence of favorable expert testimony, he has not proven that any such testimony could have been obtained for trial or that the introduction of such testimony could have affected the outcome of the trial. Therefore, Petitioner has failed to prove either deficiency or prejudice by trial counsel. This issue is without merit, and Petitioner is not entitled to relief on this basis.

Petitioner argues that trial counsel was ineffective because he did not present a defense, that is, he did not present any proof at trial. We disagree. Trial counsel testified that his trial strategy was to raise reasonable doubt in the minds of the jury about whether Petitioner was actually present and involved in the shooting. Trial counsel felt that he could do this through cross-examination and argument. We will not second guess this strategy, even though it was unsuccessful. *See House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) ("The fact that a particular strategy or tactic failed or hurt the defense does

not, standing alone, establish unreasonable representation."). Petitioner has not proven that trial counsel selected that strategy based on inadequate preparation. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (holding that deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation). Furthermore, Petitioner has not identified any evidence that trial counsel could have presented at trial that would have affected the outcome of the proceeding. Therefore, Petitioner has failed to prove either deficiency or prejudice by trial counsel. This issue is without merit, and Petitioner is not entitled to relief on this basis.

Petitioner argues that trial counsel provided ineffective assistance at the sentencing hearing because he did not call any witnesses to testify on Petitioner's behalf. We disagree. Petitioner suggests that trial counsel could have called the psychologist who conducted the pre-trial psychological evaluation or the administrator of the juvenile detention center. Again, Petitioner did not provide any witnesses at the evidentiary hearing who would have been helpful to him at the sentencing hearing. In fact, both Petitioner and trial counsel testified that Petitioner's own mother was not willing or interested in aiding her son in this regard. Therefore, Petitioner has failed to prove either deficiency or prejudice by trial counsel. This issue is without merit, and Petitioner is not entitled to relief on this basis.

Petitioner argues that trial counsel was ineffective by letting the trial judge conduct the *Momon* hearing rather than questioning Petitioner himself.[3] However, Petitioner does not argue that the *Momon* hearing as performed by the trial judge somehow coerced him into waiving his right to testify. Petitioner testified that he accepted trial counsel's advice that testifying at trial would not be in his best interest. Although Petitioner testified at the evidentiary hearing that he was unaware that a formal *Momon* hearing in open court would occur, he also testified that he fully intended not to testify at trial before the *Momon* hearing occurred. Petitioner claims he was intimidated by the inherent authority of the trial judge, but the hearing itself had no effect on his decision. Petitioner has shown neither deficiency nor prejudice in trial counsel's acquiescence to the trial judge's performance of the *Momon* hearing. This issue is without merit, and Petitioner is not entitled to relief on this basis.

Because Petitioner has failed to prove by clear and convincing evidence that his trial counsel acted deficiently during the course of his representation and that any deficiencies were so prejudicial that there is a reasonable probability that the outcome of the trial would have been different, Petitioner has not established that he received the

---

[3] Petitioner relies on language in the *Momon* decision tasking defense counsel with questioning the defendant and admonishing that, "[u]nder normal circumstances, therefore, the Trial judge should play no role in this." 18 S.W.3d at 162.

ineffective assistance of counsel in violation of his Sixth Amendment rights. Accordingly, Petitioner is not entitled to post-conviction relief on this basis.

## B. Capital Case Qualifications

Petitioner argues that "Tennessee Supreme Court Rule 13 § 3 should apply to all first-degree murder cases." That rule establishes certain "minimum qualifications" for defense counsel in capital cases. Because that rule does not apply to non-capital murder cases, it is not a legal basis for relief in this case.

## C. Miller v. Alabama

Petitioner argues that his effective sentence violates the Eighth Amendment. In *Miller v. Alabama*, 132 S. Ct. 2455, 2469 (2012), the Supreme Court ruled that a mandatory sentence of life without the possibility of parole for a minor constitutes unconstitutionally cruel and unusual punishment. The Supreme Court recently declared the holding of *Miller* to be retroactively applicable to those, like Petitioner, who received such a sentence before *Miller* was decided. *Montgomery v. Louisiana*, 136 S. Ct. 718, 732 (2016). Petitioner argues that his two consecutive life sentences place his release eligibility date far beyond his life expectancy, thereby rendering his possibility of parole illusory and effectively operating as a sentence of life without parole in violation of *Miller*.

We believe that Petitioner's sentence does not run afoul of *Miller* for two reasons. First, the holding of *Miller* is simply limited to a life sentence *without the possibility of parole* (emphasis added). *See* 132 S. Ct. at 2469. Petitioner did not receive such a sentence for any of the crimes of which he was convicted. In Tennessee, a defendant convicted of first degree murder is subject to three potential sentences: (1) death, (2) life without the possibility of parole; or (3) life. T.C.A. § 39-13-202(c). When a defendant currently receives a life sentence in Tennessee, no parole is involved. He serves a specific number of years, and then he is released with no parole supervision.[4] His sentence is done.

To be clear, although it may appear otherwise, Defendant received a sentence to which he is eligible for release. He received two life sentences, consecutive. *Miller* is silent about its applicability to consecutive sentences imposed for multiple convictions, and we are unwilling to stretch its holding beyond its four corners. On numerous occasions, this Court has refused to extend *Miller* to life sentences. *See Floyd Lee Perry, Jr. v. State*, No. W2013-00901-CCA-R3-PC, 2014 WL 1377579, at * (Tenn. Crim. App.

---

[4] Pursuant to our statutes, life imprisonment permits release eligibility after serving fifty-one years. *See* T.C.A. § 40–35–501(h)(1), (i)(1), (i)(2)(a) (2010) (amended 2012, 2013, 2014).

Apr. 7, 2014), *perm. app. denied* (Tenn. Sept. 18, 2014) ("While the logical next step may be to extend protection to these types of sentences, that is not the precedent which now exists."); *accord Kenneth A. Adams v. State*, No. W2014-02160-CCA-R3-PC, 2015 WL 5680228, at *2 (Tenn. Crim. App. Sept. 28, 2015), *perm. app. filed* (Tenn. Nov. 30, 2015); *Billy L. Grooms v. State*, No. E2014-01228-CCA-R3-HC, 2015 WL 1396474, at * (Tenn. Crim. App. Mar. 25, 2015), *perm. app. denied* (Tenn. July 21, 2015), *petition for cert. filed*, *Billy L. Grooms v. Tennessee*, No. 15-7604 (U.S. Oct. 19, 2015); *Kayln Marie Polochak v. State*, No. M2013-02712-CCA- R3-CD, 2015 WL 226566, at *36 (Tenn. Crim. App. Jan. 16, 2015), *perm. app. denied* (Tenn. May 14, 2015); *Cyntoia Denise Brown v. State*, No. M2013-00825-CCA-R3-PC, 2014 WL 5780718, at *21 (Tenn. Crim. App. Nov. 6, 2014), *perm. app. denied* (Tenn. May 15, 2015). We continue to follow that pattern of applying *Miller* simply as written.

Second, we note that *Miller* did not hold that a juvenile can never be sentenced to life without the possibility of parole. *Miller*, 132 S. Ct. at 2469 (expressly declining to adopt a categorical approach). Instead, it merely held that a mandatory sentencing scheme that withholds from the judge or jury the authority to impose a sentence less than life without the possibility of parole, even where appropriate based on mitigating evidence regarding a juvenile's youthful shortcomings and amenability to correction, is unconstitutional. *Id.* at 2468. The Supreme Court explained that mandatory imposition of the harshest criminal sentence still available for juveniles,[5] without individualized sentencing consideration, "poses too great a risk for disproportionate punishment." *Id.* at 2469. In this case, neither the individual sentences nor the effective (consecutive) sentence was mandatory—the trial court was required to give individualized consideration to both the offender, including his youth, and the offense when crafting Petitioner's effective sentence. *See* T.C.A. § 39-13-204(i)-(j); *see also* T.C.A. § 40-35-115(b).

Because Petitioner did not receive a mandatory sentence of life without parole, his sentence does not violate the Eighth Amendment according to *Miller*. Petitioner is not entitled to relief on this basis.

---

[5] In *Roper v. Simmons*, 543 U.S. 551 (2005), the Supreme Court declared the death penalty for juvenile offenders unconstitutional.

-12-

*Conclusion*

Because Petitioner has not proven that he received ineffective assistance of counsel at trial or that his sentence is unconstitutional, he is not entitled to relief. Accordingly, the decision of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE